**Ioannis BOBOLAKIS, Plaintiff,**

v.

**COMPANIA PANAMENA MARITIMA SAN GERASSIMO, S.A., and Transmar Agencies, Inc., Defendants.**

United States District Court
S. D. New York.

Nov. 18, 1958.

Request for Certification Denied
Nov. 26, 1958.

Lebovici & Safir, New York City, for plaintiff, Herbert Lebovici, of counsel.

Dawson & Waaland, New York City, for defendant, Compania Panamena Maritima San Gerassimo, S. A., David P. Dawson, Thorolv T. Waaland, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Defendant Compania Panamena Maritima San Gerassimo, S. A. (hereinafter Compania) moves pursuant to Rule 12

(b) (1) Fed.R.Civ.P. 28 U.S.C.A. for an order dismissing the complaint for lack of jurisdiction over the subject matter insofar as the complaint states a claim under the Jones Act, 46 U.S.C.A. § 688. By this same motion, defendant Compania also asks that the court in its discretion decline to take jurisdiction insofar as the complaint alleges a claim under the General Maritime Law.

Plaintiff, a seaman, brought this action at law under the Jones Act and the General Maritime Law, to recover for injuries he allegedly sustained while serving aboard the S/S Marcella, a vessel owned by Compania. Plaintiff alleges that his injuries resulted from defendants' negligence and the unseaworthiness of the ship.

The undisputed jurisdictional facts in this case may be briefly stated: (1) Plaintiff is a citizen and resident of Greece; (2) the accident took place in Canadian waters; (3) the S/S Marcella was of Panamanian registry; (4) defendant Compania is a Panamanian corporation; (5) the majority of Compania's stock is owned by residents and citizens of New York and (6) plaintiff was engaged as a crew member by Compania in the port of Baltimore.

Plaintiff alleges in his complaint that defendant Compania was " * * * entirely controlled and operated by citizens of the State of New York and of the United States." This allegation was denied and in its reply affidavit in support of this motion, Compania argues that the claim of control does no more than restate the admitted fact of stock ownership. Defendant Compania also asserts that at the time of the injury, the S/S Marcella was under charter to a Canadian citizen and that in the articles of employment which plaintiff signed, he agreed that in the event of injury, the rights of the parties would be determined according to the law of Panama.

In support of its motion to dismiss Compania argues that the facts of this case show insufficient contacts with the United States to support subject matter jurisdiction under the Jones Act. Thus, the first part of this motion presents but one substantial legal question: I must decide whether the Jones Act[1] is applicable to a case where the only significant contact with the United States is the ownership by Americans of the majority of the shares of the vessel's corporate owner. My determination of this question, like any similar inquiry into jurisdiction under the Jones Act, must begin with an examination of the leading case of Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254. There, the Supreme Court painstakingly analyzed the factors determining the choice of the applicable law in a case of this kind.[2] The law of the flag was found to be of cardinal importance but the Court was careful to point out that the law of the place of allegiance of the defendant shipowner could also be determinative. The Court wrote:

"[I]t is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law

---

1. The statute confers rights upon "Any seaman who shall suffer personal injury in the course of his employment * *."

2. Mr. Justice Jackson, writing for the majority, discussed the significance of: (1) Place of the Wrongful Act; (2) Law of the Flag; (3) Allegiance or Domicile of the Injured; (4) Allegiance of the Defendant Shipowner; (5) Place of Contract; (6) Inaccessibility of Foreign Forum; (7) Law of the Forum. Factors (1), (2), (3) and (4) were said to be significant in determining the applicability of the Jones Act. The place of the contract, for example, will have little effect on this question. See Berendson v. Rederiaktiebolaget Volo, 2 Cir., 1958, 257 F.2d 136.

places upon them." 345 U.S. at page 587, 73 S.Ct. at page 931.

See also Gerradin v. United Fruit Co., 2 Cir., 60 F.2d 927, certiorari denied 1932, 287 U.S. 642, 53 S.Ct. 92, 77 L. Ed. 556, cited with approval in Lauritzen.

In the light of the clear language in Lauritzen and of other cases dealing with foreign ownership, I have grave doubt that it can any longer be seriously contended that the courts will not take jurisdiction of a Jones Act case where the plaintiff is an alien and this country's sole significant contact with the case is American ownership of the vessel itself. See Carroll v. United States, 2 Cir., 1943, 133 F.2d 690, 693; Gilmore & Black, Admiralty 388 (1957).

But Compania argues that in this case the ship's corporate owner (Compania Panamena Maritima San Gerassimo, S. A.), and not the vessel itself, is owned and controlled by Americans. The moving defendant urges me to hold that the rationale of Lauritzen does not cover this case. Under the view pressed by Compania, an American owner might escape his statutory liability merely by interposing a foreign corporation between himself and the vessel, both of which, for all practical purposes, he owns. I do not believe that the law can be so easily baffled. Cf. Central Vt. Transp. Co. v. Durning, 1935, 294 U.S. 33, 37, 55 S.Ct. 306, 79 L.Ed. 741. For the purposes with which we are concerned such corporate intervention is but a weak fortress. Indeed, shortly after the Supreme Court's decision in Lauritzen, the ineffectiveness of foreign incorporation as a shield against Jones Act liability was established by this court in Zielinski v. Empresa Hondurena de Vapores, D.C.S.D.N.Y.1953, 113 F.Supp. 93.

There the court found Jones Act jurisdiction proper where all of the stock of a corporate owner of a foreign flag vessel was owned by an American corporation which had also chartered the ship, and the plaintiff was a Polish citizen domiciled in the United States.[3] The court found the facts of that case substantially in line with those in Gerradin v. United Fruit Co., supra, involving a foreign flag ship owned by an American corporation. The addition of another corporate entity to the chain of ownership was treated as a distinction without a difference.

I am asked to distinguish Gerradin and Zielinski on the ground that they both involved American domiciliaries. A careful reading of those decisions convinces me that in both cases the ownership of the vessel was the key contact.

For the reasons stated and in the light of the foregoing authority, I find that majority ownership and control by Americans of the corporate owner of the vessel represents sufficient contact with the United States to justify the application of the Jones Act to this case.[4]

I am aware that my brethren in this district are split on the issue before me. In Rodriguez v. Solar Shipping, Ltd., D.C.S.D.N.Y., 169 F.Supp. 79 and in Petition of Volusia Steamship Co., Ad. 188–240 (S.D.N.Y. decided February 28, 1957), stock ownership by Americans was found to be a sufficient contact, while in Mproumeriotis v. Seacrest Shipping Co., D.C.S.D.N.Y.1957, 149 F.Supp. 265 and Argyros v. Polar Compania de Navegacion, Ltda., D.C.S.D.N.Y.1956, 146 F.Supp. 624, stock ownership was held not a sufficient contact to give the court Jones Act jurisdiction. The Mproumeriotis and Argyros cases were dis-

---

3. The court pointed out that liability was not being imposed on an American owner by ignoring a foreign corporate entity. Rather the liability was imposed upon the foreign corporation by treating it as if it had been incorporated in the United States.

4. Defendant does not assert that the choice of law clause in the articles of employment should alter the result. In any event, under the facts of this case, such a clause is ineffective to defeat plaintiff's statutory rights. See Zielinski v. Empresa Hondurena de Vapores, supra.

tinguished in the Rodriguez opinion on the ground that in those cases the plaintiffs did not allege both ownership and control. I note that the plaintiff in this case does allege control. Whether or not the distinction based on an allegation of control is valid, I believe, for the reasons I have already stated, that the result reached in the Rodriguez and Volusia cases is the correct one.

■ Since I have found that this court has subject matter jurisdiction over the Jones Act claim, defendant Compania's request that the court decline jurisdiction of claims under the General Maritime Law may be treated briefly. Having taken jurisdiction over the statutory claim, the court also exercises its discretion to accept jurisdiction over that part of the case based on the General Maritime Law. This will assure that complete justice is done between the parties in a single suit and with a minimum of confusion. See Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148; Troupe v. Chicago D. & G. Bay Transit Co., 2 Cir., 1956, 234 F.2d 253, 258; Bartholomew v. Universe Tankships, Inc., D.C.S.D.N.Y., 168 F.Supp. 153; Cf. The Fletero v. Arias, 4 Cir., 1953, 206 F.2d 267, 271; Tselentis v. Michalinos Maritime & Commercial Co., D.C.S.D.N.Y.1952, 104 F.Supp. 942.

Defendant Compania's motion is, therefore, denied in its entirety.

So ordered.

### On Request for Certification

In an opinion filed November 18, 1958, I denied the motion of Compania Panamena Maritima San Gerassimo, S. A. for the dismissal of the complaint against it in a Jones Act case. The Compania now requests that I certify that my order denying the motion involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Under the new Interlocutory Orders Appeals Act, 28 U.S.C. § 1292(b), as added by Public Law 85–919, such a certification would permit the Court of Appeals, in its discretion, to allow an immediate appeal from the denial of the motion to dismiss.

The basis for the request seems to be that this case is an important one, in the sense that the law applicable to many other cases will be in doubt until the issue passed on in Bobolakis is finally decided by the Court of Appeals.

■ However, I believe that the legislative history of Public Law 85–919 plainly indicates that the statute is to be invoked only in exceptional cases "to avoid unnecessary delay and expense." I am fortified in this view as a result of the reading given the statute by the Third Circuit Court of Appeals in the recent case of Milbert v. Bison Laboratories, Inc., 3 Cir., 260 F.2d 431.[1] It is clear that this legislation was aimed at the "big" and expensive case where an unusual amount of time and money may be expended in the pre-trial phases of the case or where the trial itself is likely to be long and costly. The Senate report mentions anti-trust actions as an example of the type of case in which appeals might be allowed under the statute. There is nothing in the language of the statute or its legislative history to support the view that Congress intended to establish something akin to a "certiorari" policy for the Courts of Appeals whereby "important" cases would

1. There the court said: "It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely."

See also Senate Report 2434, reprinted in 18 U.S.Code, Congressional and Administrative News, 1958, p. 7263 (85 Cong. 2d Sess.)

receive special appellate treatment. Thus, I believe that a party cannot avail himself of the statute unless he shows that the appeal would save him from the cost and delay of protracted and expensive litigation.

I have been shown nothing to indicate that this case is at all exceptional, except in that it involves an important legal question. The pre-trial and trial phases of this action should be much like those in any other Jones Act case. The request for a certification pursuant to P. L. 85–919 is therefore denied.

So ordered.