**Elena Jerezano MONCADA, as Personal Representative of the Estate of Arturo Moncada, Deceased, Plaintiff-Appellant,**

**v.**

**LEMURIA SHIPPING CORP. et al., Defendants-Appellees.**

**No. 48, Docket 73-1184.**

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1973.

Decided Jan. 21, 1974.

Thomas M. Breen, New York City, for plaintiff-appellant.

William M. Kimball, New York City (Burlingham, Underwood & Lord, New York City, on the brief), for defendants-appellees.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Arturo Moncada was a Honduran seaman employed aboard the S.S. Ekberg from June 12, 1968 until his death on September 27, 1968. Moncada fell ill and died aboard ship at Maceio, Brazil. The medical examiner determined the cause of death to be severe edema of the lungs (pulmonary congestion). Alleging negligence by the master of the ship in failing to call a doctor rapidly, the widow of the decedent brought this suit under the Jones Act and general maritime law against Ekberg Shipping Corp. (which owned the vessel and employed

the crew), Lemuria Shipping Corp. (the chartering broker for the vessel), and S.A. Lumber & Shipping Co. (which managed the ship).

The district court held that the American contacts were insufficient to establish Jones Act jurisdiction. It therefore dismissed the Jones Act claim and discharged the jury to which plaintiff would have been entitled under the Jones Act. Proceeding to trial without a jury, the judge found for defendants. We reverse as to defendant Ekberg Shipping Corp., but affirm as to the other defendants.

■ The literal terms of the Jones Act do not require that either the parties or the injury have any connection with the United States.[1] However, the courts have long recognized that Jones Act jurisdiction is subject to some limitations. See Lauritzen v. Larsen, 345 U.S. 571, 576–577, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). In Bartholomew v. Universe Tankships, Inc., 263 F.2d 437 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S. Ct. 1138, 3 L.Ed.2d 1030 (1959), we held that Jones Act jurisdiction exists only where there are substantial contacts between the transaction involved in the case and the United States, with substantiality to be determined on an absolute scale and not by comparing or balancing the presence of certain contacts with the absence of others. Id. at 440–441. No subsequent decision of this court or of the Supreme Court has undercut the holding of *Bartholomew*. Indeed, in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309 n.4, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court expressly adopted the test enunciated by Judge Medina in *Bartholomew*. Whether, as appellee suggests, the dissent in *Rhoditis* might now win the support of a majority of the Supreme Court is not for us to decide.

■ In determining whether the contacts in a given case are "substantial" the courts have given consideration to the significance attaching to specific contacts. In Lauritzen v. Larsen, supra, the Supreme Court enumerated the following contacts as worthy of consideration: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. 345 U.S. at 583–592, 73 S. Ct. 921. In *Rhoditis* the Court held that this list is not exhaustive. It decided that the shipowner's base of operations is also an important contact and that "there may well be others." 398 U.S. at 309, 90 S.Ct. 1731. Thus we must consider each factor and its importance in the context of this case.

The majority of the contacts enumerated in *Lauritzen*, seem to favor the defendants in this case. But as we have indicated above, our task is not to weigh or balance present against absent contacts, but merely to determine whether the contacts which are present are substantial. Thus the Court in *Rhoditis* found for the plaintiff although the majority of contacts favored the defendant. Moreover, many of the factors here favoring defendants have been declared insignificant in *Lauritzen* and succeeding cases. In *Lauritzen* the Court conceded that traditional maritime law "gives cardinal importance to the law of the flag," 345 U.S. at 584, 73 S.Ct. at 929, but noted that in light of resort of American shipowners to foreign flags of convenience, courts have often ignored the law of the flag in order "to enforce against American shipowners the obligations which our law places upon them." Id. at 587, 73 S.Ct. at 931. Other contacts to which the courts have paid little atten-

1. The Jones Act, 46 U.S.C. § 688 (1970), reads as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . ."

tion include the place of injury, *Lauritzen,* supra, at 583, 73 S.Ct. 921; the place where the contract was made, *Lauritzen,* supra, at 588–589, 73 S.Ct. 921; Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 653 (4th Cir. 1960), cert. denied, 365 U.S. 869, 81 S. Ct. 903, 5 L.Ed.2d 859 (1961); and the inaccessibility of a foreign forum, *Lauritzen,* supra, 345 U.S. at 589–591, 73 S. Ct. 921; Southern Cross Steamship Co. v. Firipis, supra, 285 F.2d at 653. ·

 Of the contacts favoring the plaintiff in the present case, the most important is that all of the stock of all the defendants was owned by Americans. In *Bartholomew* we suggested that American ownership alone suffices to establish Jones Act jurisdiction. 263 F.2d at 443 n. 4. That position was expressly adopted by then District Judge Irving R. Kaufman in Bobolakis v. Compania Panamena Maritima San Gerassimo, S.A., 168 F.Supp. 236 (S.D.N.Y. 1958). However, we need not rely upon this ground alone, for there are here additional contacts which, when added to American ownership, make the sum of the contacts substantial. The Supreme Court in *Rhoditis,* approving Pavlou v. Ocean Traders Marine Corp., 211 F. Supp. 320, 325 (S.D.N.Y.1962), held that the shipowner's base of operations is also significant. 398 U.S. at 309, 90 S. Ct. 1731. The location of the managing and chartering agents for the vessel are also entitled to consideration. See *Bartholomew,* 263 F.2d at 441. In the instant case all defendants have their base of operations in this country and the managing and chartering of the vessel were conducted from this country. In addition to those contacts all officers of the defendants are American. See *Bartholomew,* 263 F.2d at 441. Approximately 40% of the vessel's voyages began or ended in American ports. See *Rhoditis,* 398 U.S. at 310, 90 S.Ct. 1731.

In light of the precedents construing the Jones Act and of the purposes of Congress in enacting the Jones Act we hold that the contacts between this transaction and the United States

are substantial and that Jones Act jurisdiction exists. The decision of the district court must be reversed. Because plaintiff was entitled to have her Jones Act claim tried to a jury, she was also entitled to a jury trial on her claims under general maritime law. Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); Harney v. William M. Moore Building Corp., 359 F.2d 649, 656 (2d Cir. 1966). Thus plaintiff will also have a right to a jury trial of these claims on remand.

Although there were sufficient contacts to establish Jones Act jurisdiction the district court properly dismissed the actions against defendants Lumber and Lemuria on the ground that they neither owned the S.S. Ekberg nor were the employers of the deceased seaman. Thus the dismissal is affirmed as to these defendants. Romero v. International Terminal Operating Co., 358 U.S. 354, 384–385, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670 (2d Cir. 1971); Dassigienis v. Cosmos Carrier & Trading Corp., 442 F.2d 1016 (2d Cir 1971).