**Panagangelos ANTYPAS,**
**Plaintiff-Appellant,**

v.

**CIA. MARITIMA SAN BASILIO, S. A.,**
**et al., Defendants-Appellees.**

**No. 726, Docket 75–7672.**

United States Court of Appeals,
Second Circuit.

Argued April 13, 1976.

Decided Aug. 2, 1976.

---

Herbert Lebovici, Lebovici & Safir, New York City, for plaintiff-appellant.

Alvin L. Stern, Poles, Tublin, Patestides & Stratakis, New York City (John G. Poles and Alan Van Praag, New York City, of counsel), for defendants-appellees.

Before CLARK, Associate Justice,* MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

Mr. Justice CLARK:

This is an appeal from an order of the District Court dismissing appellant's complaint seeking recovery for maintenance and cure, and injuries allegedly sustained in 1972 while employed as a seaman aboard the Greek flag vessel *Eurybates.* The injury allegedly occurred while the vessel was on the high seas proceeding on a voyage from Hamburg to the Far East and back to Europe. Jurisdiction is predicated on the Jones Act, 46 U.S.C. § 688.[1] The suit was dismissed on the ground of *forum non conveniens* because the contacts of the employer as measured by *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), are minimal. Our examination of the record[2] reveals substantial contacts sufficient to support jurisdiction under *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), and we reverse.

The District Court found: "The only United States contact in this case is the presence here of defendant P. D. Marchessini & Co., (New York) Inc., which acted as a ship's agent while Cia. Maritima San Basilio S. A. vessels were in United States ports . . . The evidence submitted by plaintiff is not sufficient to support its claim that the shipping line is controlled by American citizens from New York. In fact, plaintiff has failed to distinguish the facts relating to the ownership and operation of the S.S. "Eurybates" by Cia. Maritima San Basilio, S. A. from those found to be true

---

* United States· Supreme Court, Retired, sitting by designation.

1. The statute confers rights upon "Any seaman who shall suffer personal injury in the course of his employment . . .."

2. Appellant's "Exhibits in Support of Opposing Affidavit".

concerning its ownership and operation of another vessel in *Garis v. Compania San Basilio S.A.,* 386 F.2d 155 (2d Cir. 1967). Opinion, November 14, 1975 (unpublished).[3]

Our examination of the record indicates a direct connection between the *Eurybates,* the vessel on which appellant was injured, the appellee shipowner, Cia. Maritima San Basilio, S.A. (San Basilio), a Panamanian corporation, and the appellee P. D. Marchessini & Co., (New York) Inc. During 1972, the *Eurybates* operated alternatively on the two liner services constituting the Marchessini Lines, one service from the United States to Europe and back, and the other from the United States to the Far East and back. The operation of the Marchessini Lines, a trade name used by San Basilio and Sociedad Maritima San Nicholas, S.A., was conducted by P. D. Marchessini & Co. from its offices in New York.[4] All of the stock of San Basilio and Sociedad Maritima San Nicholas, S.A., was owned by Panaghi D. Marchessini, his wife, Helen, and two sons, Dimitri and Alexander. Apparently, each was a citizen of the United States.[5]

The "joint service" operation under the name "Marchessini Lines" was subject to the Shipping Act of 1916, 46 U.S.C. § 801, *et seq.,* as well as the jurisdiction of the Federal Maritime Commission. A copy of the agreement filed with the Maritime Commission between the two parties trading as Marchessini Lines is in the record. This agreement provides for the delegation to P. D. Marchessini and Co. Ltd. (London), a general agency, and empowers it to redelegate to its subagent in the United States full and complete responsibility for the booking and solicitation of cargo and passengers, and collection of freight and passenger revenues for account of Marchessini Line vessels, including the *Eurybates.* Pursuant to this agreement, P. D. Marchessini & Co. (New York) was given the power to fix rates, allocate tonnage and space sailings.

The record also includes copies of advertisements inserted in shipping journals calling attention to the Marchessini Lines, soliciting business therefor, and indicating the dates of sailings of various vessels, including the *Eurybates.* One advertisement includes a listing of agents in Philadelphia, Baltimore, Charleston, Tampa and Los Angeles and designates Marchessini & Co. (New York) as "USA General Agents." The Marchessini Lines advertised also in the New York Times, describing its service as "linking North Europe, U.S. East Coast and Far East" and listing the address of P. D. Marchessini & Co. at 26 Broadway, N.Y. The record includes also tariffs filed by P. D. Marchessini & Co. (New York) with the Federal Maritime Commission on sailings

---

**3.** In *Garis v. Cia. San Basilio,* 261 F.Supp. 917 (S.D.N.Y.1966), aff'd, 386 F.2d 155 (2d Cir. 1967), the District Court dismissed a complaint for personal injuries by a Greek seaman sustained aboard a vessel owned by Cia. Maritima San Basilio, S.A., the same defendant that appears as appellee herein, on the grounds that the defendant had insufficient contacts with the United States to justify retaining jurisdiction. The opinion is distinguishable since the proof here is different from that relied upon by the parties there. Moreover, the court's reasoning in *Garis* largely has been modified by the subsequent decisions of *Hellenic Lines Ltd. v. Rhoditis, supra,* and *Moncada v. Lemuria Shipping Co.,* 491 F.2d 470 (2d Cir.), cert. denied sub nom. *Ekberg Shipping Corp. v. Moncada,* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974).

**4.** Appellees admit the P. D. Marchessini & Co. (New York) is a New York corporation having

its place of business at 26 Broadway, New York, New York, and that all of its stock is owned by American citizens. Appellees' Brief at 4.

**5.** At deposition Panaghi D. Marchessini testified that he, his wife and his two sons were stockholders of Cia. Maritima San Basilio, S.A. and Sociedad Maritime San Nicholas, S.A., and that each is a citizen of the United States. Appellant's Exhibit 12 in Support of Opposing Affidavit. On April 21, 1976, appellee filed a certified copy of a certificate of loss of nationality of the United States, stating that Panaghi D. Marchessini "made formal renunciation of American nationality" on December 27, 1962. Although this may raise a question about his nationality, it does not bear upon the status of his wife and sons who own stock in Marchessini & Co. (New York).

from Atlantic and Gulf ports of the United States to Far East and European ports. In addition, the record includes samples of accounts prepared by P. D. Marchessini & Co. (New York), for vessels of the Marchessini Lines and an extract from the "Owners" volume of *Lloyd's Register of Shippers* indicating that the owner of the *Eurybates* could be contacted "c/o of P. D. Marchessini & Co. (New York), 26 Broadway".

■ We find these contacts between the transaction involved and the United States to be substantial and that Jones Act jurisdiction exists. It appears that at least some of the stockholders of the shipowner, San Basilio, are American citizens. This contact, in and of itself, has been held sufficient to support jurisdiction under the Jones Act. *Bobolakis v. Cia. Panamena Maritima, San Gerassimo,* 168 F.Supp. 236 (S.D.N.Y. 1958). In addition, however, the record here shows that Marchessini Lines was operated by P. D. Marchessini & Co. from New York and that the *Eurybates* was under its direct control. Moreover, the earnings from the vessel appear to be collected in New York and the expenses of the vessel paid from New York.

■ These contacts are substantial and predominate over such factors as the ship's flag, the place of incorporation of the shipowner, and the seaman's nationality. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Pavlou v. Ocean Traders Marine Corp.,* 211 F.Supp. 320 (S.D.N.Y.1962). We hold that the District Court clearly erred in finding the contacts to be insubstantial and in failing to apply the Jones Act. Where the Jones Act applies, this Court has held that a district court has no power to dismiss on grounds of *forum non conveniens. Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 443 (2d Cir. 1959). Accordingly, we reverse.

VAN GRAAFEILAND, Circuit Judge (dissenting):

Although I believe that the District Court was correct in holding the Jones Act inapplicable to all three defendants I would, nonetheless, have been willing to concur with my colleagues in reversing as to plaintiff's employer had they held simply that the decision as to it should await more complete development of the facts. However, when the majority, finding facts to have been established which, at best, are in dispute, holds the Jones Act applicable to all defendants I have no alternative but to record my dissent.[1]

The Eurybates, the vessel on which appellant was injured, was owned by Cia. Maritima San Basilio S.A., a Panamanian corporation. In support of its application to dismiss, Maritima submitted the affidavit of its vice president which stated:

"None of the directors or shareholders of CIA MARITIMA SAN BASILIO S.A. are [sic] residents or citizens of the United States of America."[2]

In the face of this unequivocal statement and the District Court's finding in support thereof, I find inexplicable the majority's statements that some or all of these stockholders are American citizens. The deposition referred to in footnote 5 of the majority opinion was not taken in this case. Indeed, we are not informed when and in what action it was taken, except that apparently it antedated 1962. The unsatisfactory excerpt from this mysteriously unidentified deposition, upon which my brothers rely, is set forth in its entirety in the margin.[3] In it, Panaghi D. Marchessini testifies

---

**1.** Since the Jones Act applies only as between employee and employer, *Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165, 170 (2d Cir. 1973), it is clear, under any version of the facts herein, that the complaint was properly dismissed as to two of the named defendants.

**2.** A similar affidavit was filed by one of the attorneys for the defendants.

**3.** EXAMINATION BY MR. SALEM:

Q. Will you please state your full name for the record?

A. My full name is Panaghi D. Marchessini.

Q. Are you an American citizen, Mr. Marchessini?

A. Yes, I am.

that he, his wife and two sons, are the shareholders of some unnamed corporation and that they are American citizens. At least five years after this testimony was taken, we stated in *Garis v. Compania Maritima San Basilio, S.A.,* 386 F.2d 155, 157 (2d Cir. 1967) (per curiam) that Maritima's "officers, directors, and stockholders were citizens and residents of Greece." There is nothing in the record to indicate that the situation has changed since that opinion was written.

When a complaint asserts a substantial claim under the Jones Act, the District Court has jurisdiction to determine whether in fact the Act does provide the rights upon which plaintiff relies. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). The question before the District Court, therefore, was not one of jurisdiction. Rather, it was whether plaintiff's cause of action is "well founded in law and in fact", *Lauritzen v. Larsen,* 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953); i. e. whether the Jones Act is applicable to any of the appellees under the facts of the case. *Voyiatzis v. National Shipping & Trading Corp.,* 199 F.Supp. 920, 922 (S.D.N.Y.1961). If the Jones Act does apply, appellees' liability must be determined in accordance with its broadly remedial substantive provisions. *Dassigienis v. Cosmos Carriers & Trading Corp.,* 442 F.2d 1016, 1017 (2d Cir. 1971).

Although challenges to Jones Act coverage are usually by motion to dismiss for lack of subject matter jurisdiction, Gilmore & Black, The Law of Admiralty, 481 (1975), appellees' motion below was for summary judgment. Whatever the form of the motion, it was not the proper medium for deciding disputed questions of fact. *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 979 (2d Cir. 1975); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). The facts either warrant the application of the Jones Act or they do not, *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 443 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); and the resolution of disputed questions of fact is for the trial. *Rodriguez v. Solar Shipping, Ltd.,* 169 F.Supp. 79 (S.D.N.Y.1958). In my opinion, it is as erroneous to hold, on the basis of disputed pre-trial affidavits, that appellees' duties are fixed by the Jones Act as it would be to hold that they are not. Insofar as my brothers make a present determination that the Act is applicable to the three appellees, I respectfully dissent.

* * * * * *

Q. Do you know who the stockholders of that corporation are ?

A. Yes.

Q. Who are they?

A. The stockholders are myself and my family.

Q. Who is that?

A. My sons and my wife.

Q. Your two sons?

A. My two sons and my wife.

Q. And your wife is, of course, an American citizen?

A. She is.

Q. And your two sons are American citizens?

A. They are.

Q. This situation has existed for a number of years?

A. What situation?

Q. Stock ownership.

A. Yes, many years.